A06A1372. MARINER HEALTH CARE, INC.
v. PRICEWATERHOUSECOOPERS, LLP et al.
(638 SE2d 340)

JOHNSON, Presiding Judge.

In 1998, Paragon Health Network, Inc., acquired and merged with Mariner Health Group, Inc. (MHG). After the merger, both companies ended up in bankruptcy, resulting in the post-bankruptcy creation of Mariner Health Care, Inc. (Mariner). On August 29, 2002, Mariner filed a complaint, which it later amended, in Fulton County State Court. The complaint alleges that auditor Pricewaterhouse-Coopers, LLP, and former MHG officers Arthur Stratton, Jr., David Hansen, Paul Diaz and Douglas Stone committed fraud that caused Paragon to purchase MHG at an artificially inflated cost of more than $535 million.

Pricewaterhouse filed no counterclaims against Mariner, but filed a third-party complaint against former MHG directors Stiles Kellett, Jr., and Samuel Kellett, for indemnification or contribution should it be found liable to Mariner in the primary action. The Kelletts filed their own third-party complaint against Stratton, Hansen, Diaz, Stone and a Pricewaterhouse partner for contribution or indemnification.

Stratton, Hansen, Diaz and Stone, in turn, asserted counterclaims against the Kelletts for contribution, and Stratton also filed a claim for indemnification against the Kelletts. Stratton, Hansen, Diaz and Stone initially filed counterclaims against Mariner. But in March 2004, pursuant to OCGA § 9-11-41 (a) and (c), they voluntarily dismissed their counterclaims against Mariner.

In May 2004, Pricewaterhouse filed a motion for sanctions pursuant to OCGA § 9-11-37 (b), alleging discovery abuses by Mariner and seeking dismissal of the complaint with prejudice. On July 22, 2004, the day before the hearing scheduled on the motion for sanctions, Mariner filed a written notice of voluntary dismissal without prejudice under OCGA § 9-11-41 (a), and a renewal action in Fulton County Superior Court.

Pricewaterhouse and the four former MHG officers objected to and moved to strike Mariner's notice of voluntary dismissal. The state court sustained their objections and struck Mariner's notice of voluntary dismissal, ruling that the pending third-party claims for contribution and indemnification against the Kelletts preclude Mariner from voluntarily dismissing its action. Thereafter, the court granted Pricewaterhouse's motion for discovery sanctions, dismissing the action with prejudice. Mariner appeals.

1. Mariner argues that the trial court erred in striking its notice of voluntary dismissal under OCGA § 9-11-41 (a) because there were no counterclaims or other claims for affirmative relief pending against it. We agree.

At the time Mariner filed its lawsuit, OCGA § 9-11-41 (a) provided that a plaintiff could voluntarily dismiss its action before resting its case, so long as no counterclaiming defendant objected to the dismissal.[1]

> Subject to the provisions of subsection (c) of Code Section 9-11-23, of Code Section 9-11-66, and of any statute, an action may be dismissed by the plaintiff, without order or permission of court, by filing a written notice of dismissal at any time before the plaintiff rests his case. After the plaintiff rests his case, permission and an order of the court must be obtained before dismissal. If a *counterclaim* has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the *counterclaim* can remain pending for independent adjudication by the court.[2]

The Supreme Court has liberally construed the counterclaim limitation on voluntary dismissals by applying it, not only to counterclaims, but to other defensive pleadings seeking affirmative relief from the plaintiff.[3] "The purpose of the counterclaim limitation on voluntary dismissals is to prevent a plaintiff from invoking the jurisdiction of the court and then withdrawing when the defendant seeks affirmative relief from the plaintiff."[4]

At the time Mariner filed its notice of voluntary dismissal, no counterclaims or other claims seeking affirmative relief were pending against it. Pricewaterhouse and the former MHG officers had filed only third-party claims for contribution or indemnification that

---

[1] OCGA § 9-11-41 (a) was amended, effective July 1, 2003, to provide that the notice of dismissal must be filed before the first witness is sworn, rather than before the plaintiff rests its case. The parties agree that this amended version of the statute does not apply to the instant case because Mariner's action was filed before July 1, 2003.

[2] (Emphasis supplied.) OCGA § 9-11-41 (a).

[3] See *Moore v. Moore*, 253 Ga. 211, 212 (317 SE2d 529) (1984) (voluntary dismissal prevented where defendant did not file counterclaim, but did seek affirmative relief in answer); *Arrendale v. Arrendale*, 228 Ga. 295, 297-298 (1) (185 SE2d 83) (1971) (motion for contempt sought affirmative relief).

[4] *Worthen v. Jones*, 240 Ga. 388, 389 (240 SE2d 842) (1977).

are wholly derivative of Mariner's main action. Because those third-party claims seek no affirmative relief from Mariner, they cannot be used to invoke the counterclaim limitation on voluntary dismissals.[5]

Pricewaterhouse and the four former officers contend that subsection (c) of OCGA § 9-11-41, as interpreted by *Thomas v. Auto Owners Ins. Co.*,[6] extends the counterclaim limitation of subsection (a) to cross-claims and third-party claims, and thus the pending third-party claims against the Kelletts for contribution or indemnification support the trial court's decision to strike Mariner's voluntary dismissal. The contention is without merit.

Subsection (c) is entitled *Dismissal of counterclaim, cross-claim, or third-party claim*, and provides in its entirety, "This Code section also applies to the dismissal of any counterclaim, cross-claim, or third-party claim."[7] It is apparent that subsection (c) simply extends the same right of voluntary dismissal afforded to plaintiffs by subsection (a) to parties that have filed counterclaims, cross-claims or third-party claims.[8] So just as plaintiffs may voluntarily dismiss their actions, defendants filing counterclaims, cross-claims and third-party claims can voluntarily dismiss their respective claims. In fact, as noted above, the four former MHG officers availed themselves of this right by voluntarily dismissing, pursuant to OCGA § 9-11-41 (a) and (c), the counterclaims that they had initially brought against Mariner. But nothing in the plain language of subsection (c) extends the counterclaim limitation to wholly derivative third-party claims for contribution or indemnification so that such claims can be used to bar a plaintiff's voluntary dismissal of its action.

Likewise, *Thomas*[9] does not hold that a cross-claimant or third-party claimant can prevent a plaintiff's voluntary dismissal. Indeed, that issue was not even before the court in *Thomas*. Rather, the sole issue in that case was whether an insurance carrier could continue its cross-claim for indemnification against a co-defendant who had been dismissed by the plaintiff in the principal action.[10] The *Thomas* court

---

[5] Compare *Brown v. Liberty County*, 247 Ga. App. 562, 568-569 (544 SE2d 738) (2001) (objection to voluntary dismissal properly sustained where defendant sought affirmative relief in amended answer). See *Smith v. Mem. Med. Center*, 208 Ga. App. 26, 28-29 (1) (430 SE2d 57) (1993) (voluntary dismissal effective where party objecting to it had filed no claim for affirmative relief against plaintiff).

[6] 221 Ga. App. 815 (472 SE2d 707) (1996).

[7] OCGA § 9-11-41 (c).

[8] It also appears that subsection (c) of OCGA § 9-11-41 applies the statute's other subsections – concerning involuntary dismissal, the cost of a previously dismissed action and dismissal for want of prosecution – to dismissals of counterclaims, cross-claims and third-party claims.

[9] Supra.

[10] Id.

answered that question in the negative, holding that the insurance company's failure to object to the dismissal of the main claim meant that the entire action, including the insurance company's cross-claim, had been terminated.[11]

Pricewaterhouse and the former officers reason that this holding implies that if the cross-claiming insurance company had actually objected to the plaintiff's voluntary dismissal, then the entire action would have continued. We cannot speculate as to what the *Thomas* court might have held based on hypothetical circumstances. But what is clear from the facts under which that case was decided is that *Thomas* does not support the proposition that the counterclaim limitation on voluntary dismissals has been extended to derivative cross-claims or third-party claims.

Instead, under OCGA § 9-11-41 (a), Mariner had the right to dismiss its action at any time before resting its case, so long as there were no counterclaims or other claims for affirmative relief pending against it. Since Pricewaterhouse and the former MHG officers did not file counterclaims or otherwise seek affirmative relief from Mariner, but asserted only third-party claims for contribution or indemnification, the trial court erred in ruling that their objections could prevent Mariner's voluntary dismissal of its action.

2. Pricewaterhouse and the four former MHG officers further argue that the Pricewaterhouse motion for sanctions for alleged discovery abuses pursuant to OCGA § 9-11-37 (b) provided a basis for application of the counterclaim limitation of OCGA § 9-11-41 (a). Although the trial court did not strike Mariner's notice of voluntary dismissal on this basis, Pricewaterhouse and the former officers claim that we should nevertheless affirm the trial court's ruling if it is right for any reason.

But Pricewaterhouse and the former officers cite no case in which a motion for sanctions has served as a basis for barring a plaintiff from voluntarily dismissing its action. Indeed, this court has consistently reversed trial court decisions disallowing voluntary dismissals in the face of pending sanctions motions.[12] For instance, the case of *C & S Indus. Supply Co. v. Proctor & Gamble Paper Products Co.*[13] is virtually identical to the instant case.

In that case, only minutes before a scheduled hearing on a defense motion for sanctions, the plaintiff filed a notice of voluntary

---

[11] Id. at 816 (1).

[12] See *Bailey v. Austin*, 185 Ga. App. 831 (366 SE2d 214) (1988); *Johnson v. Wade*, 184 Ga. App. 675 (362 SE2d 469) (1987).

[13] 199 Ga. App. 197 (404 SE2d 346) (1991).

dismissal pursuant to OCGA § 9-11-41 (a).[14] The trial court struck the notice of voluntary dismissal and then dismissed the complaint and assessed attorney fees as sanctions.[15] On appeal, this court reversed the trial court's rulings, finding that the plaintiff had the right to voluntarily dismiss despite the pending motion for sanctions under OCGA § 9-11-37 (b).[16]

> Pursuant to OCGA § 9-11-41 (a) a plaintiff may voluntarily dismiss his action, without order or permission of the trial court, at any time before he rests his case. However, the announcement by a trial judge of a decision that will terminate a civil case, though that decision has not been formally reduced to writing and entered, will preclude the filing of a voluntary dismissal after the announcement but before the judgment is actually entered by the trial judge. It is knowledge of the actual, not of the possible, result of a case which precludes the exercise of the right of dismissal. Although the termination of appellant's action by dismissal of its complaint was obviously a possible result of the impending hearing on appellee's motion for sanctions, there is no evidence that appellant had prior knowledge that such a sanction would actually be imposed.[17]

The appeals court went on to find that after the plaintiff had voluntarily dismissed its complaint, nothing remained pending in the trial court but the motion for sanctions pursuant to OCGA § 9-11-37 (b).[18] The court further noted that if the defendant had wished to secure attorney fees based on the alleged discovery abuse, it could have so moved under OCGA § 9-15-14.[19] But, the court concluded, the notice of voluntary dismissal was valid and the trial court's subsequent order striking the notice and imposing sanctions under OCGA § 9-11-37 (b) was a nullity.[20]

As in that case, there is no evidence in the instant case that Mariner had prior knowledge that the sanction of dismissal with prejudice, pursuant to OCGA § 9-11-37 (b), would actually be imposed when it filed its notice of voluntary dismissal. And despite the inconvenience to Pricewaterhouse and the former MHG officers,

---

[14] Id.
[15] Id.
[16] Id. at 198.
[17] (Citations and punctuation omitted.) Id. at 197.
[18] Id. at 198.
[19] Id.
[20] Id.

Mariner's voluntary dismissal at this stage of the litigation is consistent with the legislative purpose of the voluntary dismissal statute. The legislative intent behind the enactment of OCGA § 9-11-41 (a) is to afford a plaintiff, faced with a contrary verdict or other untenable position, a second chance to litigate his suit; and despite any irritation or inconvenience to the defendant, there is no bad faith exception to the plaintiff's right to voluntarily dismiss his complaint.[21]

We recognize that this legislative intent is significantly different from that behind the federal voluntary dismissal statute, which does not allow a plaintiff to voluntarily dismiss an action after a defendant has answered or moved for summary judgment, whichever comes first.[22] The purpose of the federal rule is to limit voluntary dismissals to an early stage of the litigation before issue is joined and to prevent such dismissals at advanced stages of litigation.[23] But under the broader and more liberal rule adopted by the Georgia General Assembly, which allows voluntary dismissals up until the plaintiff rests his case, the trial court improperly prevented Mariner from exercising its right to dismiss its action in the face of possible sanctions pursuant to OCGA § 9-11-37 (b). The trial court's erroneous order striking the notice of voluntary dismissal must be reversed, and the subsequent order imposing the sanction of dismissal with prejudice was a nullity and must also be reversed.[24]

*Judgment reversed. Miller and Ellington, JJ., concur.*

DECIDED OCTOBER 10, 2006 —
RECONSIDERATION DENIED NOVEMBER 2, 2006 —

*Jones Day, Michael J. McConnell, Joseph E. Finley, David C. Kiernan, G. Lee Garrett, Jr.,* for appellant.

*Sutherland, Asbill & Brennan, John A. Chandler, Elizabeth V. Tanis, Drew D. Dropkin, William D. Barwick, Bondurant, Mixson & Elmore, Jill Pryor,* for appellees.

---

[21] *Bunch v. Vincent,* 234 Ga. App. 637, 637-638 (2) (507 SE2d 239) (1998); *C & S Indus. Supply Co.,* supra.

[22] USCS Fed. Rules Civ. Proc. R. 41 (a) (1).

[23] *Harvey Aluminum, Inc. v. American Cyanamid Co.,* 203 F2d 105, 107 (2d Cir. 1953); *Ockert v. Union Barge Line Corp.,* 190 F2d 303, 304 (3d Cir. 1951).

[24] See *Cotton v. Surrency,* 277 Ga. App. 158 (626 SE2d 148) (2006); *C & S Indus. Supply Co.,* supra.

*Daugherty, Crawford, Fuller & Brown, Jason L. Crawford*, amicus curiae.